IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WALTER CRANE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 09-cv-922-JPG-PMF |
| | ) |
| MICHAEL J. ASTRUE, Commissioner of | ) |
| Social Security | ) |
| | ) |
|     Defendant. | ) |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

    Plaintiff Walter Crane seeks review of a final decision by the Commissioner of Social Security denying his July, 2005, application for disability benefits. Crane's application was initially denied at the various levels of administrative review. An Administrative Law Judge (ALJ) conducted a hearing and reached a decision on December 9, 2008, finding that Crane was not disabled. That decision became final when the Appeals Council denied further review. Judicial review of the Commissioner's final decision is available under 42 U.S.C. § 405(g).

    To receive disability benefits or supplemental security income, a claimant must be "disabled." A disabled person is one whose physical or mental impairments result from anatomical, physiological, or psychological abnormalities which can be demonstrated by medically acceptable clinical and laboratory diagnostic techniques and which prevent the person from performing previous work and any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A).

The Social Security regulations provide for a five-step sequential inquiry that must be followed in determining whether a claimant is disabled. 20 C.F.R. § 404.1520. The Commissioner must determine in sequence: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets or equals one listed by the Commissioner, (4) whether the claimant can perform his or her past work, and (5) whether the claimant is capable of performing any work in the national economy. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). If the inquiry proceeds to Step 4, the burden shifts to the Commissioner to demonstrate that the claimant can perform a significant number of jobs that exist in the economy. *See Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004).

The ALJ evaluated Crane's application through the five-step sequential analysis. Initially, the ALJ found that Crane had not engaged in substantial gainful activity since 2007.[1] Assessment of the medical records revealed severe physical and mental impairments, identified as degenerative joint disease of the spine, depression, and a posttraumatic stress disorder. These impairments did not combine to meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ also decided that Crane retained the ability to perform a range of medium work activity, with limitations on public contact. While this assessment did not permit his return to his past

---

[1] Crane's average monthly earnings in 2007 exceeded the threshold sum, resulting in a presumption that he engaged in substantial gainful activity that year.

job as a tree trimmer, Crane was found not disabled because he could still perform a significant number of other jobs in the national economy. The ALJ specifically identified the jobs of food preparer and packager. Both jobs required performance of simple tasks; neither involved public contact (R. 10-18, 30).

## I. Standard of Review

Under the Social Security Act, this Court must sustain the Commissioner's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g). The substantial evidence standard requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The court is not allowed to displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations. *See Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Even if reasonable minds could differ concerning whether a claimant is disabled, the Court must still affirm a decision that is adequately supported. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

## II. ALJ Assessment of Medical Opinion Evidence

Crane argues that the ALJ disregarded important medical evidence from Dr. Melinda Bloos. Ph.D. On May 12, 2008, Dr. Bloos, a clinical psychologist, performed a compensation and pension examination for post traumatic stress disorder (PTSD). She reviewed Crane's medical records and conducted an interview. She did not administer standardized tests. Bloos diagnosed chronic PTSD and dysthymia, rated Crane's global

3

functioning level at 50 for the PTSD and at 55 for the depressive disorder, and gave him a very guarded prognosis for improvement.[2] Her findings were later considered when the U.S. Department of Veterans Affairs increased Crane's disability rating from 50% to 100% (R. 301-308, 354-56). Defendant responds that the ALJ considered this evidence.

Dr. Bloos' evaluation is part of an exhibit labeled 10F. While the ALJ explicitly mentioned this particular exhibit and proclaimed that opinion evidence was considered, she did not recount or specifically evaluate Dr. Bloos' assessment. She discussed some other medical source opinions, including a February, 2006 psychological report prepared by Dr. Ballesteros and a March, 2006, assessment by Dr. Wharton (R. 14, 208-209, 212-224). The ALJ made several collective references to the medical records, treatment, and progress notes in reports compiled by the Veteran's Administration medical center (R. 14-16). Those comments adequately show that the ALJ considered the findings of Dr. Bloos, whose assessment is contained in the Veteran's Administration materials under the heading "Progress Note" (R. 301-308). The ALJ also specifically mentioned the disability rating decision. That decision relates many of Dr. Bloos' findings (R. 12-16, 354-55).

One of the legal rules governing social security determinations is that ALJs must consider all relevant evidence and may not select and discuss only the evidence which

---

[2] Mental health professionals use the Global Assessment of Functioning Scale (GAF) to describe psychological, social, and occupational functioning on a hypothetical scale. A score of 50 reflects serious symptoms or any serious impairment in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 34(rev. 4th ed. 2000).

supports the ultimate conclusion. *Herron v. Shalala*, 19 F.3d at 333; *Edwards v. Sullivan*, 985 F.2d 334, 337 (7th Cir. 1993)(ALJ must weigh all credible medical evidence). Even so, ALJs are not required to articulate an assessment of each piece of information. To permit meaningful review, they must minimally discuss reasons for accepting or rejecting entire lines of evidence. *Herron v. Shalala*, *supra*. The right amount of articulation shows that the important evidence has been considered and reveals the path of the ALJ's reasoning. *Books v. Chater*, 91 F.3d 972, 980 (7th Cir. 1996).

The ALJ's articulation level is certainly minimal; even so, her comments and findings demonstrate that the important evidence was considered throughout the sequential evaluation. Indeed, the findings that Crane had a post traumatic stress disorder which was severe and caused mild to moderate limitations in Crane's ability to function in relevant areas demonstrates that Dr. Bloos' consultative assessment and similar findings were taken into account. If the ALJ had relied solely on the Ballesteros examination, as Crane suggests, there would be no such findings. Dr. Ballestaros did not even diagnose a post traumatic stress disorder (R. 208-211). In sum, the Court is satisfied that the ALJ considered Dr. Bloos' medical opinion when she decided that Crane had medically determinable mental impairments, when she decided that Crane's mental impairments were severe, and when she assessed the limiting effect of Crane's mental health symptoms on his ability to function in the workplace.

### III.     Procedure for Obtaining Consultative Opinion

Crane argues that the Social Security Administration erred by failing to provide copies of medical records to Dr. Ballesteros in advance of his February, 2006, psychological examination (Doc. No. 13, p. 11).  Because this position is not accompanied by citation to or discussion of relevant authority, there is no adequate framework for legal analysis. Accordingly, the argument is deemed waived.  *Kelly v. Municipal Courts of Marion County*, 97 F.3d 902, 910 (7th Cir. 1996); *United States v. Eddy*, 8 F.3d 577, 583 (7th Cir. 1993).

### IV.     Independent Medical Assessment

Crane argues that the ALJ improperly made an independent medical assessment by reporting that he appeared "fairly healthy" and did "not look depressed" at the hearing (R. 14).  The Commissioner has not responded to this argument.

When a treating physician restricts a patient's activities, an ALJ may not substitute her own personal opinion about the nature or extent of the claimant's medical condition for that of the physician.  *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992).  That is, ALJs must be careful not to succumb to the temptation to make an independent medical determination.  *Schmidt v. Sullivan*, 914 F.2d 117, 188 (7th Cir. 1990).  Rather, ALJs must base their decisions on the evidence in the record.

At the hearing, Crane offered very limited information about his mental health symptoms or treatment (R. 22-29).  His medical records reflected that his symptoms of depression were intermittent (R. 172, 177, 266).  In these particular circumstances, the ALJ could rationally take note of Crane's appearance, manner, and demeanor when judging

credibility. *See Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).  Moreover, the ALJ focused her discussion on tangible evidence gleaned from medical assessments, treatment records, and progress notes, indicating that Crane's appearance and manner at the hearing was a very minor factor in the analysis (R. 16).  The ALJ's remarks do not amount to reversible error.

### V. Listing 12.06

Crane argues that his condition meets Listing 12.06.  The listings describe various physical and mental illnesses and abnormalities according to the particular body system that is affected.  Crane can show that his impairment meets a listing by demonstrating that all of the specified medical criteria have been met.  *Sullivan v. Zebley*, 493 U.S. 521, 529-30 (1990).

Listing 12.06 has criteria for anxiety disorders in paragraphs A, B, and C.  The "A" criteria describe the particular disorder while the "B" and "C" criteria alternately describe impairment-related functional limitations incompatible with the ability to perform any gainful activity.  20 C.F.R. pt. 404, Subpt. P, App. 1, § 12.00.

Plaintiff suggests that his post traumatic stress disorder met the "A" and "B" criteria.  As to the second point, he directs the Court's attention to multiple scores rating his global functioning level in the 41-50 range.  He believes this evidence should have led the ALJ to infer that he had marked restriction of activities of daily living, marked difficulties in maintaining social functioning, and marked difficulties in maintaining

concentration, persistence, or pace (Doc. No. 13, p. 12). The noted portions of the administrative record (R. 227-28, 235, 240-43, 250-264, 301-308) do not lend support to this argument. In the context of social security disability, severity ratings are based on the extent to which the impairment interferes with the "ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1520a(c)(2). By way of example, activities of daily living include cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for grooming and hygiene, using telephones and directories, and using a post office. 20 C.F.R. Subpt P, App. 1, § 12.00(c)(1). The administrative record overwhelmingly supports the ALJ's finding that Crane's symptoms of posttraumatic stress had a minimal effect on his performance of daily living activities. For example, on the occasions when Theresa A. Kelly, Theresa Atwood, and Arlene Miksanek rated Crane's global functioning around 50, he arrived at his appointments on time, his clothing was appropriate, and he was clean and neat (R. 227, 235, 240, 242, 249, 257, 264). He verified that he helped with bill-paying and took care of his own grooming, and described no problems with activities of daily living, which Dr. Bloos described as "intact" (R. 257, 259, 305). Similarly, ample portions of the record support the ALJ's assessment of mild restrictions on activities requiring concentration, persistence, and pace (R. 182, 199, 318, 334, 343). In sum, reasonable minds viewing this record as a whole could conclude that Crane's mental impairments, while

severe, did not cause "marked" limitations in at least two of the relevant areas of functioning.

## VI. Conclusion

IT IS RECOMMENDED that the Commissioner's final decision denying Walter Crane's July, 2005, application for disability benefits be AFFIRMED.

SUBMITTED:   December 1, 2010   .

    S/Philip M. Frazier
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**